IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALEXANDER N. ASANOV, on behalf of himself, similarly situated individuals; BIOELECTROSPEC, INCORPORATED; and TIRF TECHNOLOGIES, INCORPORATED<br><br>v.<br><br>DENIS K. LEGEIDO | No. 3-07-1288 |

TO:   Honorable Robert L. Echols, Senior District Judge

### REPORT AND RECOMMENDATION

By order entered January 9, 2008 (Docket Entry No. 4), this case was referred to the Magistrate Judge for consideration of pretrial matters pursuant to Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1)(A)-(B).

On December 28, 2007, the plaintiff, proceeding pro se, filed a "Complaint for Judgment for Infringement and Illegal Use of Trade Name, Intentional Interference with Business Operations, and for Compensatory and Punitive Damages" against defendant Denis K. Legeido. Although the plaintiff[1] initially had difficulty effecting service of process on the defendant, the defendant was eventually served and, the defendant, also proceeding pro se, filed an answer (Docket Entry No. 11) and later a motion to dismiss (Docket Entry No. 14).

Contemporaneously with the filing of the complaint, the plaintiff filed an "Emergency Petition for Preliminary Injunction and Protective Orders" (Docket Entry No. 2). By order entered January 17, 2008 (Docket Entry No. 5), the Court advised the plaintiff that the motion for preliminary injunction would not be considered until the defendant had been served with process. Once the defendant was served with process, the plaintiff filed another motion for preliminary

---

[1] All references herein to "plaintiff" are intended to refer to plaintiff Alexander N. Asanov.

injunction (Docket Entry No. 15). Therefore, as provided in a separately entered order, the first-filed motion for preliminary injunction (Docket Entry No. 2) has been rendered as moot in light of the second-filed motion (Docket Entry No. 15).

Although the plaintiff has not responded to the defendant's motion to dismiss nor has the defendant responded to the plaintiff's motion for preliminary injunction, those filings contain the parties' respective positions. For the reasons set forth herein, the Court recommends that the plaintiff's motion for preliminary injunction be denied and the defendant's motion to dismiss be granted.

## I. PLAINTIFFS

The complaint names "Alexander N. Asanov on behalf of himself, similarly situated individuals, BioElectroSpec, Incorporated, and TIRF Technologies, Incorporated" as plaintiffs. By order entered January 17, 2008 (Docket Entry No. 5), the Court noted that, although the plaintiff is not asserting a class action, he explains in the complaint that the "similarly situated individuals" are his colleagues and partners who have vested interests in BioElectroSpec and TIRF Technologies. The Court advised the plaintiff that he cannot represent other "colleagues and partners" and that any such persons must sign a complaint. The Court further advised the plaintiff that he cannot represent BioElectroSpec or TIRF Technologies since any corporation must be represented by an attorney pursuant to Local Rule 83.01(d)(3). Plaintiffs were given until February 29, 2008, to file an amended complaint, specifically naming any additional plaintiffs, signed by an attorney on their behalves or signed by each such individual plaintiff, and plaintiffs BioElectroSpec and TIRF Technologies were given until February 29, 2008, to obtain counsel. Finally, the plaintiffs were advised that the failure of BioElectroSpec and TIRF Technologies to obtain counsel and the failure of the unnamed plaintiffs to join in and sign an amended complaint could result in the dismissal of all plaintiffs except Alexander N. Asanov.

No attorney has entered an appearance for any plaintiff in this case.[2] No amended complaint was filed. Therefore, the claims of all plaintiffs except plaintiff Alexander N. Asanov should be dismissed for failure to comply with the January 17, 2008, order.

## II. BACKGROUND

The defendant Denis Legeido is a former employee of BioElectroSpec. According to the plaintiff, the plaintiff was the sole owner of BioElectroSpec and he hired or contracted with the defendant in 1999 to work on a government project as the Information Technology Engineer. In 2000, the plaintiff hired the defendant for the full-time position of Information Technology Engineer and the defendant also "assumed the functions" of Vice President of BioElectroSpec. Docket Entry No. 1, at 2. Although the plaintiff expected that the defendant would become a partner in BioElectroSpec, the plaintiff asserts that the defendant failed to become a contributing member and partner. In 2004, the plaintiff's wife founded TIRF Technologies to perform phase II of the government-funded project. The plaintiff served as CEO and President of TIRF Technologies. According to the plaintiff, in 2005, the defendant was separated from his employment with BioElectroSpec and he was never employed by TIRF Technologies.

Although the plaintiff recounts the "absurd suggestions" that the defendant made, including holding BioElectroSpec and TIRF Technologies credit cards and bank accounts and running the companies from other states, all of which the plaintiff rebuffed, the plaintiff specifically complains that the defendant has "illegally" proclaimed himself as "Owner of TIRF Technologies" in "his posting at the Internet, which has the intent of job hunting." Id. at 4. It is this alleged act that the plaintiff contends violates the plaintiff's registered trade name of TIRF Technologies because the defendant's prospective employers contact TIRF Technologies, where they receive negative opinions about the defendant.

---

[2] As the Court noted in the January 17, 2008, order, the plaintiff expressed his intent to hire an attorney to represent him, TIRF Technologies, BioElectroSpec, and his business partners in the "later stage" of this case.

3

The plaintiff states, in conclusory fashion, that the defendant's "self-damaging conduct" of "illegally proclaim[ing] himself as 'Owner of TIRF Technologies'" has injured TIRF Technologies and its team, and has "deprived [TIRF Technologies'] founders, partners, workers and owners of vitally important business opportunities." Id. at 4. The plaintiff further asserts that "[a]s a result of damaging misconduct of [the defendant], the Plaintiff, his colleagues, partners, and TIRF Technologies have lost important business opportunities that account several million dollars." Id. at 5. The plaintiff also asserts that the defendant's "wrongdoing" has "resulted in potential damage to the US national security" since his "intentional interference" with "business operations of TIRF Technologies deprives our country of invaluable technological advancement in the area of biodefense and counterterrorism measures." Id. The plaintiff further explains that he "leads a group of scientists and engineers, which would be enthusiastically and productively working on US federal projects, if the Defendant would not damage and would not interfere with their work." Id. The plaintiff further alleges that the "illegal action of the Defendant has resulted in enormous damage to the Plaintiff--loss of important business opportunities in the area of venture capital investments, damage to the career, and loss of technological and national security opportunities to the U.S.A." and that, because the plaintiff is seeking for-equity capital investment, the defendant's actions have resulted "in lost opportunity of several million dollar investments to TIRF Technologies." Id. at 7.

The plaintiff seeks a permanent injunction to prohibit the defendant from further illegal use of the trade names "TIRF Technologies" and "BioElectroSpec," and two million dollars in compensatory damages, in addition to punitive damages.

### III. CAUSES OF ACTION

The plaintiff asserts diversity jurisdiction and federal question jurisdiction under the United States Constitution and "U.S. Federal Law that regulate use of trade names." In the section of his complaint entitled "Cause of Action," the plaintiff asserts that the plaintiff violated federal and state

laws "regulating use of trade names" that prohibit use of a registered trade name without the owner's permission. Id.

The plaintiff cites no specific statutes or constitutional provisions. Although the Court is not required to divine the basis of the plaintiff's asserted causes of action, it may be that the plaintiff intends to assert a claim under the Lanham Act, 15 U.S.C. § 1114, which provides in pertinent part:

> (1) Any person who shall, without consent of the registrant–
>
> > (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .
>
> ***
>
> shall be liable in a civil action by the registrant . . . .

15 U.S.C. § 1114(1).[3]

The Tennessee Trade Mark Act of 2000 also provides in pertinent part:

> [A]ny person who:

---

[3] See also 15 U.S.C. § 1125(a)(1), entitled "False designations of origin, false descriptions, and dilution forbidden," which as follows:

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods, services, or commercial activities by another person, or
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Since the plaintiff provided no statutory citations, it is not clear what he might have relied on, but it appears more likely that the plaintiff might have brought a claim for trademark infringement pursuant 15 U.S.C. § 1114 rather than a claim for unfair competition under 15 U.S.C. § 1125. See Leelanau Wine Cellars, Ltd v. Black & Red, Inc., 502 F.3d 504, 521 (6th Cir. 2007); Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1122-23 (6th Cir. 1996).

> (1) Uses, without consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this part in connection with the sale, distribution, offering for sale, or advertising any goods or services on or in connection with which such use is likely to cause confusion, mistake or deception as to the source of origin of such goods or services . .. shall be liable in a civil action by the registrant . . . .

Tenn. Code Ann. § 47-25-512.

Neither of the above statutes provide any relief to the plaintiff. Although the plaintiff asserts that "BioElectroSpec" and "TIRF Technologies" are registered marks, see Docket Entry No. 1, at 4, 5, and 7-8, it is not clear who, among the initially named plaintiffs, actually owns the marks.[4] The plaintiff has, however, focused on the defendant's use of "TIRF Technologies" in internet postings in which the plaintiff asserts the defendant has represented that he is the owner of TIRF Technologies. The plaintiff has provided the offending posting, entitled "LinkedIn Directory," which the plaintiff accessed from Google. Id. at 6.

In his answer, the defendant explains that "LinkedIn" is a social network website and not a commercial job search site, that the portion of the "LinkedIn" posting provided by the plaintiff reflects "an apparent error in the LinkedIn profiles database search index," and that he himself never represented his ownership of TIRF Technologies in the LinkedIn posting that he made. Docket Entry No. 11, at 2, and Docket Entry No. 11-1. However, the plaintiff attaches emails exchanged between the plaintiff and defendant in which the defendant asserts that, in fact, he was "an owner of the company," and describes himself as "Owner and stakeholder of Bioelectrospec/TIRF Technologies." Docket Entry No. 15-1, at 1.

Regardless of whether there is a dispute about the defendant's ownership interests in TIRF Technologies and/or BioElectroSpec, the plaintiff has not asserted that the defendant used any mark for commercial purposes to sell, offer for sale, distribute or advertise any goods or services, or that any such use is likely to cause confusion or mistake or deceive the public. The plaintiff has not alleged that the defendant has sold, offered to sell, distributed or advertised any goods. Although

---

[4] For instance, the plaintiff asserts that he and "his partners--similarly situated individuals are owners of the registered trade name 'TIRF Technologies.'" Docket Entry No. 1, at 7-8.

the plaintiff might argue that an internet posting, social or not, could assist the defendant in any job search and thus he is advertising his services, the Court is not aware of any authority to support such a proposition and such a proposition would be too attenuated to support a trademark infringement claim under the circumstances of this case.

It is not clear whether the plaintiff asserts a separate cause of action for intentional interference with business operations. The Tennessee Supreme Court has made cognizable the tort of intentional interference with business relations. See Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691 (Tenn. 2002). See also Freeman Management Corp. v. Shurgard Storage Ctrs., LLC, 461 F. Supp.2d 629, 640-642 (M.D. Tenn. 2006) (Wiseman, J.). The elements of that cause of action include (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third person; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from the tortious interference. Id. at 701. The gravamen of the tort is an act by the defendant that causes the breach or termination of a relationship between the plaintiff and a third-party with the defendant's knowledge of that relationship and the defendant's intent to cause such a breach or termination. Although the plaintiff has alluded to loss of important business opportunities as a result of the defendant's internet representation of his ownership of TIRF Technologies, the plaintiff has not alleged the requisite elements of this cause of action and cannot rely on this state law claim.

## IV. MOTION TO DISMISS

In his motion to dismiss, the defendant describes the plaintiff's case as frivolous with "no judicial or real grounds." In support, he asserts that he explained in his answer how the erroneous internet posting could have occurred. He also cites to a "barrage" of cases filed by the plaintiff in three different states, against "not only individuals, but also against federal judges and the FBI,"

7

which supports the defendant's conclusion that the plaintiff is simply "trying to manipulate the legal system." Docket Entry No. 14, at 2.[5]

While a review of some of the plaintiff's other lawsuits might support the defendant's proposition, the plaintiff's litigiousness cannot, by itself, support dismissal of this action.

Although the defendant does not specifically refer to it, the Court construes the defendant's motion to dismiss as asserting a failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Court must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff "undoubtedly can prove no set of facts consistent with" his allegations that would entitle him to relief. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). However, in Bell Atlantic v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007), the United States Supreme Court held that the factual allegations "must be enough to raise a right to relief above the speculative level . . . ." The Supreme Court also observed that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a showing that the plaintiff is entitled to relief and that the plaintiff cannot meet this threshold requirement by conclusory assertions. Id. at 1965 n.3. The factual allegations of the complaint, which must be assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief. Twombly, 127 S.Ct. at 1965; League of Latin Am. Citizens, 500 F.3d at 527. Although pro se complaints are held to less stringent standards than complaints prepared by an attorney, a complaint cannot rest on bare assertions of legal conclusions or personal opinions. The Court cannot conjure up unpled facts to support conclusory allegations. See Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989).

---

[5] The defendant has provided orders and filings in cases filed by and against Mr. Asanov, including a case in the United States District Court for the Middle District of Pennsylvania, a case filed in state court in Mississippi, and a listing of cases filed in the Eastern District of North Carolina. See Docket Entry Nos. 11-4 and 14-1.

8

Although Rule 8 of the Federal Rules of Civil Procedure permits a liberal system of notice pleading, the plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Twombly, 127 S.Ct. at 1964-65 (internal citations omitted). Thus, the plaintiff's factual allegations must "raise a right to relief above the speculative level . . . ." Id. at 1965.

As set forth above, the plaintiff has failed to even provide the statutory (or constitutional) basis for his cause of action, much less even provide "a formulaic recitation of the elements of a cause of action." The Court undertook the task of assuming statutory or case law authority for causes of action that the plaintiff may be asserting and, by doing so, has found that the plaintiff has not asserted entitlement to relief.

Perhaps most striking is the complete lack of support for any damages. The plaintiff alleges, in dramatically conclusory language, that he and his companies have been damaged to an extraordinary degree.[6] Those allegations border on the whimsical and fanciful. The plaintiff's assertion that, but for the defendant's internet posting, the plaintiff and TIRF Technologies "would have received several million dollars of venture capital investments," Docket Entry No. 1, at 7; Docket Entry No. 15, at 3, is an example of such a flight of fancy. To suggest that venture capitalists declined to provide funding to the plaintiff simply because there was a posting on the internet that the defendant was the owner of TIRF Technologies is without any factual support and would require a total suspension of disbelief. The plaintiff has utterly failed to explain, even to a rudimentary degree, how the defendant's posting on the internet that he is or was an owner of TIRF Technologies has damaged or could possibly damage the plaintiff. Even if the defendant posted the offending information on the internet site, the plaintiff has totally failed to link that posting to any damages incurred by the plaintiff. It appears from the plaintiff's complaint, as the plaintiff himself

---

[6] As addressed above, the Court has found that the claims of all plaintiffs other than plaintiff Asanov should be dismissed for failure to comply with the Court's prior order. Therefore, it is not clear what damages the plaintiff would assert he has incurred as opposed to damages allegedly incurred by his companies and others.

9

emphasizes, that, if anyone has been damaged, it is the defendant because his prospective employers have received unfavorable references about him.

In sum, the plaintiff simply has not asserted any viable cause of action against the defendant and this action should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## V. MOTION FOR PRELIMINARY INJUNCTION

Since the Court has recommended that this case be dismissed, the plaintiff's motion for preliminary injunction is rendered moot. However, even if the case were not dismissed, the plaintiff has not met the requirements for injunctive relief. The Court must consider the following four factors in determining whether a party has established a right to a preliminary injunction: (1) whether the plaintiff has sufficiently established a reasonable likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm if the injunction is not granted; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction on the public interest. Abney v. Amgen, Inc., 443 F.3d 540, 546 (6th Cir. 2006); Tucker v. City of Fairfield, Ohio, 398 F.3d 457, 461 (6th Cir.), cert. denied, 546 U.S. 929, 126 S.Ct. 399, 163 L.Ed.2d 277 (2005). Injunctive relief is an extraordinary remedy, which should be granted only if the movant carries his burden "of proving that the circumstances clearly demand it." Overstreet v. Lexington-Fayette Urban County Gov't, 305 F.3d 566, 573 (6th Cir. 2002).

Granting the injunction is unlikely to cause harm to the defendant because the defendant asserts that he made any misrepresentations on the internet. Although the plaintiff alleges that the defendant's actions have resulted in potential damage to national security and have deprived "our country of invaluable technological advancement in the areas of biodefense and counterterrorism measures," Docket Entry No. 1, at 5, the Court finds that the public interest is not likely to be impacted one way or the other. However, the first two factors clearly weigh in favor of denying the motion. First, the plaintiff has not established a reasonable likelihood that he will prevail on the

10

merits. Second, the plaintiff has not established that he will be suffer irreparable harm, or any harm whatsoever, if the injunction is not granted.

## RECOMMENDATION

For the reasons set forth above, the Court respectfully RECOMMENDS that:

1. The claims of plaintiffs BioElectroSpec, Incorporated and TIRF Technologies, Incorporated, and all claims of others "similarly situated" be DISMISSED for failure to comply with the Court's order entered January 17, 2008;

2. The plaintiff's Second Emergency Petition for Preliminary Injunction and Protective Orders (Docket Entry No. 15) be DENIED;

3. The defendant's Motion for Summary Dismissal (Docket Entry No. 14) be GRANTED; and

4. This case be DISMISSED with prejudice.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this Report and Recommendation, and must state with particularity the specific portions of this Report & Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's order. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                          Respectfully Submitted,

                                          JULIET GRIFFIN
                                          United States Magistrate Judge